AMY GUEST, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 12213. Promulgated April 30, 1948.

*B. H. Bartholow, Esq.*, for the petitioner.
*A. H. Monacelli, Esq.*, for the respondent.

OPINION.

OPPER, *Judge*: Respondent determined a deficiency in income and victory tax liability for the year 1943 in the amount of $18,883.17.

The sole litigated question is whether in computing the victory

tax limitation in section 456 of the Internal Revenue Code, chapter 1 tax for 1943 includes the increase in tax for that year occasioned by section 6 (a) of the Current Tax Payment Act of 1943.

All of the facts have been incorporated in a stipulation of facts which are hereby found accordingly, as follows:

1. The petitioner is an individual who resides in Palm Beach, Florida. The petitioner's income and victory tax return for the calendar year 1943 was filed with the Collector of Internal Revenue, Jacksonville, Florida.

2. The petitioner's income tax net income for the calendar year 1943 was $305,997.15.

3. The tax (exclusive of the victory tax) imposed upon the petitioner by chapter 1 of the Internal Revenue Code for the calendar year 1943 (determined without regard to section 6 (a) of the Current Tax Payment Act of 1943) was $242,485.28 (computed without regard to credits against the tax).

4. Such tax for the calendar year 1943 after credits against the tax was $239,181.88, the credit for income tax paid at the source being $2,558.71, and the credit for foreign taxes being $744.69.

5. The tax imposed upon the petitioner by chapter 1 of the Internal Revenue Code for the calendar year 1942 (determined without regard to section 6 (a) of the Current Tax Payment Act of 1943) was $228,922.50 (computed without regard to credits against the tax).

6. Such tax for the calendar year 1942 after credits against the tax was $225,618.32, the credit for income tax paid at the source being $2,559.49, and the credit for foreign taxes being $744.69.

7. Such tax for the calendar year 1942 (determined without regard to section 6 (a) of the Current Tax Payment Act of 1943, without regard to interest or additions to the tax, and without regard to credits against the tax for amounts withheld at the source) was $228,177.81 [$225,618.32+$2,559.49].

8. Such tax (exclusive of the victory tax) for the calendar year 1943 (determined upon the same basis used in the preceding paragraph hereof) was $241,740.59 [$239,181.88+$2,558.71].

In the notice of deficiency, respondent computed petitioner's victory tax to be $16,177.56, and computed a total income and victory tax liability, including the 25 per cent increase for 1942 tax, of $311,764.02.

When the wartime additional income tax, called the "victory tax," was enacted, it was accompanied by a saving provision designed to limit the total taxes on the income of a single year to 90 per cent. The technique employed was:[1]

The tax imposed by section 450 (Victory tax) * * * shall not exceed the excess of 90 per centum of the net income of the taxpayer for the taxable year over the tax imposed by this chapter [chapter 1], computed without regard to section 450 * * *.

The victory tax was made applicable to years beginning with 1943, and to the same year, and shortly after the adoption of section 450, there was also made applicable the Current Tax Payment Act, the purpose of which was to place taxpayers on a current basis for tax purposes, and at the same time to relieve them of the payment of two

---

[1] Internal Revenue Code, sec. 456.

full years' payment in one year. This was accomplished by provisions which in effect collected a tax for 1942 or 1943, whichever was the larger, and forgave the equivalent of 75 per cent of the tax for the smaller of the two years. *William F. Knox*, 10 T. C. 550.

Petitioner's 1943 tax was greater than that for 1942, and her situation hence falls within the provisions of section 6 (a) of the Current Tax Payment Act.[2] Her combined income and victory tax for the year 1943 did not exceed 90 per cent of her income, except that if to the 1943 tax is added the 25 per cent of 1942 tax, imposed by section 6 of the Current Tax Payment Act, the three amounts combined aggregate more than the 90 per cent. The issue presented is whether the 90 per cent limitation is applicable before or after the 25 per cent addition made by section 6.

A scrutiny of the language of the 90 per cent limitation reveals that the taxes to be limited are "the victory tax," together with "the tax imposed by this chapter," that is, chapter 1. At the outset, accordingly, the problem can be stated more narrowly as the ascertainment of whether the 25 per cent additional tax provided by section 6 of the Current Tax Payment Act is a tax "imposed by this chapter."

The tentative answer would appear to be definitely in the negative. In order for a tax to be imposed by chapter 1, no other possibility reveals itself than for the provision imposing the tax to be included in chapter 1, if not as originally enacted, then at least by legislation adopted as an amendment to it. The 25 per cent tax in controversy was imposed by section 6 of the Current Tax Payment Act, which not only was not enacted as part of chapter 1, but was not designed to be even an amendment to that chapter, nor indeed to the code itself. Were we limited to these words, the provision under consideration would seem to be an unambiguous statutory command not to include the 25 per cent additional tax in the computation of the 90 per cent limitation.

In certain respects, to be sure, the tax added by section 6 is, as petitioner suggests, treated as an integral part of chapter 1 tax liability, see, e. g., *Lawrence W. Carpenter*, 10 T. C. 64, and in all probability

[2] SEC. 6. RELIEF FROM DOUBLE PAYMENTS IN 1943.

(a) TAX FOR 1942 NOT GREATER THAN TAX FOR 1943.—In case the tax imposed by Chapter 1 of the Internal Revenue Code upon any individual * * * for the taxable year 1942 (determined without regard to this section, without regard to interest or additions to the tax, and without regard to credits against the tax for amounts withheld at source) is not greater than the tax for the taxable year 1943 (similarly determined), the liability of such individual for the tax imposed by such chapter for the taxable year 1942 shall be discharged as of September 1, 1943, except that interest and additions to such tax shall be collected at the same time and in the same manner as, and as a part of, the tax under such chapter for the taxable year 1943. In such case if the tax for the taxable year 1942 (determined without regard to this section and without regard to interest or additions to the tax) is more than $50, the tax under such chapter for the taxable year 1943 shall be increased by an amount equal to 25 per centum of the tax for the taxable year 1942 (so determined) or the excess of such tax (so determined) over $50, whichever is the lesser. * * *

some of the provisions of chapter 1 are applicable to the tax imposed by section 6. Current Tax Payment Act, sec. 1 (b).[3] But since, as we have seen, the 25 per cent additional tax is "imposed" in a technical sense by section 6, and not by chapter 1, the question of what taxes Congress intended to include in the computation of the 90 per cent limitation remains at the best ambiguous. For the solution, we must resort to accepted means of statutory interpretation.

It may be accepted as the reasonable aim of section 456 that the taxpayer's income for any one year should not normally be taxed at higher than 90 per cent of that income.[4] But the approach applied in the Current Tax Payment Act was in effect to combine the years 1942 and 1943 in computing total unforgiven payments to which a taxpayer would be subjected. The undesirability of leaving untaxed in the hands of a taxpayer less than 10 per cent of his income applicable to an ordinary year would presumably be subject to a different view when the companion year involved the forgiveness of 75 per cent of the total tax. Although petitioner's remaining income for 1943 might thus prove to be less than 10 per cent of her income for that year, her remaining income for the two years 1942 and 1943 would be much greater than twice 10 per cent of the income for either of the years or than 10 per cent of the combined income of the two. It would hence not be unreasonable to suppose that the forgiveness of 75 per cent of the 1942 tax would lead to the legislative conclusion that the 90 per cent limitation need not include the 25 per cent tax carried over to 1943 from what is in effect an unpaid tax of the prior year.

It is easy to see that 125 per cent of the tax of a taxpayer in a high bracket might easily approach or even exceed the total income for a single year. When the possibility is added that one year's income could greatly exceed the other's, and that to a high tax there might be added 25 per cent of still another tax, the chance increases of numerous cases where total taxes for one year might exceed 90 per cent or even 100 per cent of the smaller year's income. That this very situation was in the minds of both Houses of Congress when the Current Tax Payment Act was passed appears from an example included in the report of the Senate Finance Committee and again in the report of the Conference managers.[5] Nothing would consequently be gained by applying to a small segment of the tax, such as the victory tax, a 90 per cent limitation, which is neither applicable nor intended in the situation as a whole.

Finally, section 456 in its amended form was passed subsequent

---

[3] (b) MEANING OF TERMS USED.—Except as otherwise expressly provided, terms used in this Act shall have the same meaning as when used in the Internal Revenue Code.

[4] The purpose of the limitation provision, as originally enacted, was "to provide that the total income tax and Victory tax should not exceed 90 per cent of the taxpayer's net income." S. Rept. No. 1631, 77th Cong., 2d sess., p. 8.

[5] S. Rept. No. 221, 78th Cong., 1st sess., p. 44 ; H. Rept. No. 510, 78th Cong., 1st sess., p. 58.

to the Current Tax Payment Act. It is applicable to the year 1943, and hence is the statutory provision operative here.[6] It was accompanied by a Senate Finance Committee report, which, eliminating the last vestige of doubt, states expressly:

* * * For taxable years beginning in 1943 the limitation provided by section 456 of the Code is computed without regard to the additions to the 1943 tax required by section 6 of the Current Tax Payment Act of 1943 and the victory tax will be payable even though such additions make the total tax greater than 90 per cent of the net income of the taxpayer. * * * [S. Rept. No. 475, 78th Cong., 1st sess.].

True, the Senate made no change in the House bill, and the quoted statement does not appear in the report of the House Ways and Means Committee. But "The fact that this is a report of a committee of only one House of Congress does not deprive it of considerable weight." *Porter* v. *Murray* (C. C. A., 1st Cir.), 156 Fed. (2d) 781, 785; *Fleming* v. *Mohawk Co.*, 331 U. S. 111, 120, 122. This unmistakable expression relating to an otherwise ambiguous reference, combined with the purpose and earlier history of the companion legislation, seems to us to furnish the most reliable aid to interpretation available to us, and to justify respondent's administrative construction to the same effect. Regulations 111, section 29.456–1, as amended by T. D. 5309, 1943 C. B. 619, 624, and T. D. 5350, 1944 C. B. 370, 372.

There being no impediment in fairness or logic to the elimination of the 90 per cent limitation under the circumstances now in controversy, we conclude that the object of the legislation and its history can lead solely to the result reached by respondent. The deficiency is accordingly approved.

Reviewed by the Court.

*Decision will be entered for the respondent.*

JOHNSON, *J.*, concurs only in the result.

---

[6] See footnote 1, *supra;* Public Law No. 178, 78th Cong., 1st sess. (H. R. 3381.)