J. H. McQUISTON AND DOROTHY T. McQUISTON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
McQuiston v. Commissioner
Docket No. 7290-70.
United States Tax Court
T.C. Memo 1981-434; 1981 Tax Ct. Memo LEXIS 305; 42 T.C.M. (CCH) 719; T.C.M. (RIA) 81434; August 17, 1981. *305 By Memorandum Opinion filed July 6, 1977 this Court set forth the adjustments to petitioners' 1967 and 1968 Federal income tax returns that were agreed to by petitioners and respondent. Such Memorandum Opinion formed the basis for the computations under Rule 155 submitted by the parties. The computations differed with respect to the proper method of computing (1) petitioners' 1967 Federal tax liability under the income averaging provisions (secs. 1301 through 1305, I.R.C. 1954); (2) petitioners' 1968 Federal tax refund resulting from an NOL carryback; and (3) petitioners' liability, if any, for an addition to tax under sec. 6654(a), I.R.C. 1954. Held, in computing "averagable income" within the meaning of sec. 1302, I.R.C. 1954, base period income may not be less than zero. Sec. 1.1302-3(b), Income Tax Regs.; Tebon v. Commissioner, 55 T.C. 410 (1970). Held further, income averaging is a method of limiting tax in a particular computation year; it does not serve to shift income itself from a computation year to base period years. Held further, respondent properly treated the 1960 NOL carryback as a deduction in arriving at taxable income for 1965 and 1966, thereby reducing average *306 base period income in the 1968 income averaging computation. Held further, respondent's determination that petitioners were liable for an addition to tax under sec. 6654(a), I.R.C. 1954, is sustained. Bruce I. Hochman and Michael Frye, for the petitioners. Clifford C. Larson, for the respondent. STERRETT
SUPPLEMENTAL MEMORANDUM OPINION STERRETT, Judge: By Memorandum Opinion filed July 6, 1977, this Court set forth the adjustments to petitioners' 1967 and 1968 Federal income tax returns as agreed to by the parties herein. There were no issues in controversy to be resolved by this Court in the original Memorandum Opinion, and the parties merely sought an opinion to provide a basis for a Rule 155 [1] computation involving the application of the income averaging provisions. See sections 1301 through 1305. Respondent filed his original computation for entry of decision under Rule 155 on June 17, 1980. On September *307 2, 1980, petitioners filed their computation for entry of decision under Rule 155. The two being at odds, a hearing took place in Los Angeles, California on November 18, 1980. On that same date, respondent filed a revised computation for entry of decision. The issues arising from the difference in the parties' computations are: (1) whether, in computing "averagable income" within the meaning of section 1302, base period income may be less than zero; (2) whether the income averaging provisions provide a special method of computing tax for only a particular computation year, having no effect on the income tax liabilities of prior and future years or whether, on the other hand, such provisions serve to shift income to other tax years; (3) what effect a net operating loss (NOL) carryback under section 172 has on the income averaging computation; and (4) whether petitioners are liable for an addition to tax under section 6654(a) for failure to pay estimated income tax. The relevant income (loss) figures of petitioners for the indicated years, as agreed to by the parties, were as follows: 1968
1967
1966
1965
Taxable income (loss)
($ 6,900)
$ 62,781
$ 38,094
($ 180)
Capital gain net income
$ 902 1964
1963
1962
Taxable income (loss)
$ 3,712
$ 1,727
$ 1,289
Capital gain net income
$ 35
$ 337
Based *308 upon these amounts, petitioners' and respondent's computations reached the following results: 1967
Petitioners
Respondent
Tax assessed and paid [2]
$ 17,319
$ 17,334
Tax liability (income averaging)
16,746
17,081
Overpayment
$ 573
$ 253
Addition to tax under sec. 6654(a)
$ 155
1968
Net operating loss (NOL)
$ 4,798
$ 4,798
Refund on carryback of NOL to
prior year
$ 1,234
$ 830
The variant tax liabilities resulted from differences in each party's income averaging calculation and their application of NOL carryback in such calculation. In Tebon v. Commissioner, 55 T.C. 410, 411 (1970), we summarized the mechanics of income averaging: The averaging provisions were enacted in 1964 for the purpose of mitigating the harsh effect of a progressive tax rate structure upon taxpayers having widely fluctuating or rapidly increasing incomes. [3] Generally, these provisions allow the excess of the current [or computation] year's taxable income (adjusted as provided in section 1302(b)) *309 over 133-1/3 percent of the average taxable income of the prior 4 [base] years (adjusted as provided in section 1302(c)(2)) to be taxed at lower than usual rates. [See sec. 1301. [4]] The calculation of tax under the income averaging provisions is based upon a determination of "average base period income," which necessarily depends on a determination of "base period income." Section 1302(c)(2) defines the term "base period income" for a taxable year as taxable income with certain adjustments. [5] *310 However, section 1.1302-3(b), Income Tax Regs., provides: (b) Base period income--(1) Definition. * * * Base period income for any taxable year may never be less than zero. Turning to the heart of this controversy, petitioners contend that they were entitled to use a negative base period income in computing averagable income for purposes of determining their Federal income tax liability under the income averaging provisions. In accordance with this contention, petitioners included in their income averaging computation a $ 180 loss for the 1965 base year in arriving at their 1967 tax liability. Respondent, relying upon section 1.1302-3(b), Income Tax Regs., eliminated this "negative base period income" from his calculation and substituted the figure zero. We upheld the validity of section 1.1302-3(b), Income Tax Regs., *311 in Tebon v. Commissioner, supra at 416. [6] Other courts have reached similar conclusions. Stevning v. United States, an unreported case ( C.D. Cal. 1979, 44 AFTR 2d 79-5945, 79-2 USTC par. 9593); Beckman v. United States, 396 F. Supp. 44, 50 (D. Kan. 1975), affd. in an unpublished opinion (10th Cir. 1977). At this late date, we are not inclined to reconsider our position in Tebon and continue to hold fast to our reasoning therein; that is, we consider section 1.1302-3(b), Income Tax Regs., to be a "valid interpretation of the statute within the broad degree of latitude conferred by the statute upon the Commissioner," 55 T.C. at 416. Therefore, we hold that petitioners erroneously included the 1965 loss in their income averaging computation. Correspondingly, respondent correctly omitted such loss and substituted a zero figure for 1965 base period income. With respect to the second issue, it is apparent from petitioners' calculation that they consider income averaging to be an income-shifting *312 device. Put simply, petitioners calculated their 1966 Federal tax liability using the income averaging provisions. Thereafter, in computing their 1967 Federal tax liability by income averaging, petitioners proceeded on the theory that the 1966 income averaging computation effected a shift in a large portion of 1966 taxable income to the 1962 through 1965 base years. [7] *313 Consequently, for the 1967 computation, average base period income under section 1302(c) was reduced because a portion of 1966 income was shifted to a year (1962) outside of the 4 base years for 1967. We find petitioners' argument ingenious, but erroneous. This methodology is inconsistent with the statute, the regulations and prior case law. The definition of "base period income" in section 1302(c)(2), as embellished in section 1.1302-3(b), Income Tax Regs., unambiguously states that base period income for a taxable year means taxable income with certain specified adjustments. That section and the applicable regulations do not sanction the adjustment proposed by petitioners. Further, the definition of "taxable income" in section 63 also fails to support petitioners' position. Therefore, the income averaging provisions do not provide for the shifting of income itself; rather, income averaging in a method of limiting the tax in a particular computation year. See Payne v. United States, 203 Ct. Cl. 391, 489 F.2d 1404, 1406 (1974); Redpath v. Commissioner, 19 T.C. 470, 473 (1952). Accordingly, we must reject petitioners' computation. On this score, we find respondent's computation to be in accord with applicable law. The third issue focuses on the relationship between an NOL carryback *314 under section 172 and the income averaging provisions. While the income averaging provisions are concerned with the computation or limitation of tax, section 172 deals with the computation of net operating loss deductions used in determining adjusted gross income. Under section 172(b), net operating losses may be carried back to the 3 preceding tax years and forward to the 5 subsequent tax years. Consistent with their income-shifting argument, petitioners carried back the $ 4,789 NOL for 1968 to their 1965 "income after averaging." In other words, although 1965 was originally a loss year, after shifting portions of 1966 and 1967 incomes to 1965 (thereby creating taxable income for that year), petitioners asserted that they were entitled to carry back the full NOL to 1965. In this manner, petitioners concluded that they were entitled to a $ 1,234 tax refund. Respondent, in opposition to petitioners' methodology, respected the integrity of each year's income averaging computation rather than resorting to an income-shifting theory. Respondent carried back the loss to 1965 and 1966, thereby allowing petitioners an $ 830 tax refund. [8] *315 As we have previously held, petitioners' income-shifting theory finds no support in the statute or otherwise. Therefore, their NOL computation must be rejected. Respondent, on the other hand, properly treated the NOL carryback as a deduction in ultimately arriving at taxable income (loss) for 1965 and 1966. Base period income for 1966 under section 1302(c)(2) was reduced in computing 1967 Federal income tax liability via income averaging. We are in agreement with respondent's meshing of sections 1301 through 1305 and section 172. [9] *316 Based on our findings on the foregoing issues, we sustain respondent's determination of petitioners' 1967 and 1968 tax liabilities. We now turn to the issue of whether petitioners are liable for a $ 155 addition to tax under section 6654(a). Sections 6015, 6073, 6153 and 6654 deal with the requirement to file a declaration of estimated tax, the time for filing said declaration, the payment of said estimated tax and an addition to tax for the failure to make timely estimated tax payments. Since we have found petitioners' theory of computing their final tax liability to be erroneous and the respondent's calculation to be correct, it follows that we hold for respondent on this issue. [10] *317 Deduction will be entered in accordance with respondent's revised computation. Footnotes
1. Unless otherwise indicated, any reference to "Rules" shall be deemed to refer to the Tax Court Rules of Practice and Procedure. All section references, unless otherwise indicated, are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.↩
2. It appears that respondent's 1967 "tax assessed and paid" amount of $ 17,334 is the correct figure. In any event, since such amount is more favorable to the petitioners than their figure ($ 17,319), we deem respondent's amount to be a concession.↩
3. H. Rept. 749, 88th Cong., 1st Sess. (1963), 1964-1 C.B. (Part 2) 233-234. ↩
4. Sec. 1301 provides: SEC. 1301. Limitation of tax.--If an eligible individual has averagable income for the computation year, and if the amount of such income exceeds $ 3,000, then the tax imposed by section 1 for the computation year which is attributable to averagable income shall be 5 times the increase in tax under such section which would result from adding 20 percent of such income to the sum of-- (1) 133-1/3 percent of average base period income, and (2) the amount (if any) of the average base period capital gain net income.↩
5. Sec. 1302(c) provides in pertinent part as follows: (c) Average Base Period Income.--For purposes of this part-- (1) In General.--The term "average base period income" means one-fourth of the sum of the base period incomes for the base period. (2) Base Period Income.--The base period income for any taxable year is the taxable income for such year first increased and then decreased (but not below zero) in the following order: (B) Taxable income shall be decreased by the capital gain net income.↩
6. See also Monson v. Commissioner, 77 T.C.     (July 23, 1981); Bode v. Commissioner, T.C. Memo. 1981-300; Carr v. Commissioner, T.C. Memo. 1981-289; Woolf v. Commissioner, T.C. Memo. 1981-286↩.
7. Summarizing petitioners' 1966 income averaging computation, they proceeded through the mathematical formula set forth in sec. 1301, computed "averagable income" ($ 35,987.33) and allocated (shifted) four-fifths of such amount to the base years. Thus, petitioners determined that their incomes and incomes after averaging for the indicated years were as follows: 1966
1965
1964
1963
1962
Income
$ 38,094 ($ 180)
$ 3,712
$ 1,727
$ 1,289
Averagable Income
Adjustment
(28,790)
7,197 7,197
7,197
7,197
Income After Averaging
$ 9,304 $ 7,017 $ 10,909
$ 8,924
$ 8,486
Thereafter, petitioners used the "income after averaging" amounts for 1963 through 1966 as the base period incomes in computing their 1967 tax liability under income averaging.
8. Petitioners take issue with respondent's treatment of 1965 medical expense deductions in the NOL carryback computation. See sec. 1.172-5(a)(3)(ii), Income Tax Regs., example (1). However, the evidence is incomplete with respect to the amount of the medical expense deduction and the amount of adjusted gross income for 1965. Petitioners have the burden of proving the impropriety of respondent's computation in all respects. Rule 142(a); Welch v. Helvering, 290 U.S. 111↩ (1933). Due to their failure to satisfy such burden, we must reject petitioners' argument.
9. It is interesting to note that, in this context, an NOL carryback has a double effect. First, petitioners were granted a tax refund as a consequence of the 1968 NOL carryback to 1965 and 1966. Second, because average base period income is reduced by the NOL, petitioners' 1967 tax also is reduced from that tax calculated prior to the incurrence of an NOL. However, it should also be noted that the carryback of an NOL to a computation year can result in the reduction or elimination of tax benefits permitted under the income averaging provisions. See sec. 1.1304-1(c), Income Tax Regs., and sec. 6511(d)(2)(B)(ii)↩.
10. Petitioners also claim that 50 U.S.C. App. sec. 2157shields them from the sec. 6654 penalty. Petitioners have not proven, as they are obligated, that such section applies to the instant case. Rule 142(a); Welch v. Helvering, supra. Moreover, even if it did apply, petitioners failed to prove that they are entitled to its protection herein. In addition, we note that certain figures computed by respondent in analyzing the exceptions specified in sec. 6654(d)↩ appear to be of questionable validity. Even so, based upon our review of the record, the correction of these improprieties would not affect the result reached herein.